The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on March 6, 2014, which may be different from its entry on the record.

**IT IS SO ORDERED.**

**Dated: March 6, 2014**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

In re: ) Case No. 11-20295
)
JOSEPH LOZAR and ) Chapter 7
TERESA LOZAR, )
) Judge Arthur I. Harris
Debtors.

MEMORANDUM OF OPINION[1]

The chapter 7 trustee seeks a determination as to the validity of creditor Harley-Davidson Credit Corporation's lien on the debtors' 2008 Harley-Davidson motorcycle. For the following reasons, the Court finds that Harley-Davidson's lien was no longer perfected as of the debtor's petition filing date. The chapter 7 trustee has an interest superior to Harley-Davidson's lien under

---

[1] This Opinion is not intended for official publication.

11 U.S.C. § 544(a)(1) and may administer the proceeds of the sale of the motorcycle for the benefit of the debtor's creditors.

## JURISDICTION

The Court has jurisdiction over this action. An action to determine the validity of a lien is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (K), which falls within the jurisdiction granted to this Court pursuant to Local General Order No. 2012-7, dated April 4, 2012.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 17, 2008, Joseph Lozar ("the debtor") executed a Promissory Note and Security Agreement with Eaglemark Savings Bank, a subsidiary of Harley-Davidson Financial Services, Inc., in connection with the purchase of a 2008 Harley-Davidson FXSTC Softail Custom motorcycle (VIN #1HD1JL5108Y052681) (Docket #39, Ex. A). Upon execution, the Promissory Note and Security Agreement were automatically assigned to creditor Harley-Davidson Creditor Corporation ("Harley-Davidson"). The debtor commenced making regular monthly payments to Harley-Davidson in June 2008 (Creditor's Ex. 1).

On January 26, 2009, Harley-Davidson received a check for $16,700.00 drawn by CitiBank, N.A. on behalf of the debtor. On January 29, 2009,

Harley-Davidson noted a lien discharge on the motorcycle certificate of title (Docket #39, Ex. A) and mailed the certificate of title to the debtor. On February 2, 2009, the debtor's check was returned "Stop Payment." (*Id.*). Harley-Davidson received another check from the debtor for $16,600.00 on February 6, 2009, which was ultimately returned for unknown reasons on February 16, 2009. Despite having received the certificate of title with a notation of discharge from the creditor, the debtor resumed making payments. On November 16, 2010, Harley-Davidson received a check for $12,435.56 drawn by FIA Credit Services, LLC on behalf of the debtor (Docket #40, Ex. 1). This check was returned "NSF - Not Sufficient Funds" on November 24, 2010 (*Id.*). The debtor made one additional payment of $75.00 in March 2011, and ceased making payments altogether in April 2011. Harley-Davidson never took corrective action to retrieve the certificate of title from the debtor or change the lien discharge notation. When the debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on December 8, 2011, the debtor was in possession of the certificate of title and the 2008 Harley-Davidson motorcycle.

On June 21, 2013, the chapter 7 trustee filed a Motion to Sell Property Free and Clear of Liens (Docket #28) to sell the debtor's motorcycle. On July 9, 2013, Harley-Davidson filed a Response (Docket #30) to the trustee's motion in which it

3

11-20295-aih    Doc 47    FILED 03/06/14    ENTERED 03/07/14 09:16:23    Page 3 of 11

objected to the sale on the ground that it still held a valid lien on the motorcycle. On November 19, 2013, the Court signed an agreed Limited Order Granting Motion to Sell Property Free and Clear of Liens (Docket #44). The Limited Order authorized a sale of the debtor's motorcycle, but ordered the trustee to hold the proceeds of the sale until the Court determines the validity of a lien claimed by Harley-Davidson on the motorcycle (*Id.*). The parties submitted joint stipulations of fact (Docket #34) and briefs (Docket #39, 40) addressing the validity of Harley-Davidson's lien.

## DISCUSSION

The chapter 7 trustee seeks a determination that creditor Harley-Davidson does not have a perfected lien on the debtor's motorcycle. The Court finds that the lien discharge notation on the certificate of title rendered Harley-Davidson's lien no longer perfected under Ohio law as of the petition date. Therefore, the chapter 7 trustee, standing in the shoes of a hypothetical judicial lien holder, has a security interest superior to Harley-Davidson's and may thus take the proceeds from the sale of the motorcycle for the benefit of the debtor's creditors.

Section 544 of the Bankruptcy Code grants the chapter 7 trustee strong-arm powers to obtain priority over creditors' unperfected liens. *See Rogan v. Bank*

4

*One, Nat'l Ass'n* (*In re Cook*), 457 F.3d 561, 564 (6th Cir. 2006). Section 544 provides in pertinent part that:

> (a) The Trustee shall have, as of the commencement of the case, without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by –
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

11 U.S.C. § 544(a)(1). Therefore, the Court's analysis turns on the validity of Harley-Davidson's lien on the debtor's motorcycle under applicable Ohio law.

Property rights in a debtor's personal property, including the validity of a lien on personal property, are generally determined by applicable nonbankruptcy law. *See Butner v. United States*, 440 U.S. 48, 54 (1979). Under Ohio law, whether a lien on a motor vehicle is properly perfected is controlled by the Certificate of Motor Vehicle Title Law, codified as amended at R.C. § 4505.01 *et seq. See Graham v. Huntington Nat'l Bank* (*In re Medcorp. Inc.*), 472 B.R. 444, 450 (Bankr. N.D. Ohio 2012) (Speer, J.) (explaining that the Certificate of Motor Vehicle Title Law generally displaces Article 9 of the Uniform Commercial Code with respect to perfection of security interests in motor vehicles). Though the

5

Ohio Certificate of Motor Vehicle Title Law controls the *perfection* of security interests in motor vehicles, the *creation* of security interests in motor vehicles is governed by the provisions of Article 9 of the Uniform Commercial Code incorporated into Ohio law under Revised Code Section 1309. *See Drown v. Perfect* (*In re Giaimo*), 440 B.R. 761, 766 (6th Cir. B.A.P. 2010), *aff'd Perfect v. Drown* (*In re Giaimo*), Case No. 11-3038 (6th Cir. Jan. 31, 2011); *see also Rhiel v. Wells Fargo Fin. Acceptance* (*In re Fields*), 351 B.R. 887 (Bankr. S.D. Ohio 2006).

The Ohio Certificate of Motor Vehicle Title Law sets forth a specific process by which perfected liens on motor vehicles may be discharged and cancelled. After receiving funds from the obligor, the lien holder, if in possession of a physical certificate of title, must note the discharge of the lien on the face of the certificate of title over the holder's signature. R.C. § 4505.13(B). Ordinarily, the lien holder must then transmit the certificate of title to the county clerk for cancellation on the face of the certificate of title and notation of the cancellation in the State of Ohio's automated title processing system. *Id*.

However, if the lien holder transfers the certificate of title to a third person prior to transmittal to the county clerk's office, the clerk is not barred from cancelling the lien. In such circumstances, the clerk has substantial discretion to

determine the authenticity of the lien discharge notation and authority of the person presenting the certificate to request cancellation. 1985 Ohio Op. Atty. Gen. No. 85-064 at 2-240-41, (citing *Ex rel Hunt v. Hildebrant*, 93 Ohio St. 1 (1915) (noting that a statutory conferral of power without specific direction as to its exercise includes implied powers necessary to performance)). The clerk is entitled to presume that the cancellation is genuine unless circumstances suggest otherwise, and presentation by someone other than the lien holder is not itself sufficient to raise a presumption that the discharge notation is not genuine. 1985 Ohio Op. Atty. Gen. No. 85-064 at 2-241.

In this case, upon receiving the debtor's January 19, 2009, check for $16,700, a representative of Eaglemark Savings Bank noted a lien discharge on the 2008 Harley-Davidson motorcycle certificate of title. At some time following that notation, Harley-Davidson mailed the certificate of title to the debtor. The debtor retained the certificate of title until it was turned over to the chapter 7 trustee upon filing a voluntary petition for Chapter 7 relief. Neither party disputes the authenticity of the notation of lien discharge. Instead, the parties contest the means by which the debtor obtained the discharge notation and certificate of title, and the legal consequences of the notation in light of

7

Harley-Davidson's mistakes and the chapter 7 trustee's strong-arm powers under Section 544 of the Bankruptcy Code.

The Court does not rely upon principles of estoppel in finding that Harley-Davidson's lien was no longer perfected on the petition filing date. Rather, Harley-Davidson's erroneous lien discharge notation and transfer of the certificate of title to the debtor, along with its failure to remedy these errors before the petition date, necessarily affected the continued perfection of its lien. The Ohio Motor Vehicle Certificate of Title Law makes physical certificates of title controlling as to perfection of liens on motor vehicles. *See* R.C. § 4505.13. As a result, notations on the certificate of title, even those made in error, can have serious consequences for creditors that fail to take prompt remedial action. *See Luper v. Guardian Fin. Co.* (*In re McAlmont*), 385 B.R. 191, 198-99 (S.D. Ohio 2008) (Hoffman, J.) (stating that a security interest on a motor vehicle not noted on the certificate of title before the bankruptcy petition is filed may be avoided by the chapter 7 trustee's strong-arm powers). Unfortunately, Harley-Davidson took no action to remedy its mistake during the nearly three years between when it sent the debtor the original certificate of title with the notation of lien discharge and the filing of the debtor's chapter 7 case. The discharge notation, when combined with the erroneous relinquishment of the

8

certificate of title to the debtor, exposed Harley-Davidson to the risk of subordination to a later creditor's security interest.

The chapter 7 trustee has an interest superior to Harley-Davidson under Section 544(a)(1), even though the trustee's interest is not properly perfected under Ohio's Certificate of Motor Vehicle Title Law. Under Section 544(a)(1), the chapter 7 trustee obtains the powers a hypothetical judicial lien creditor would have at the time the debtor's bankruptcy petition was filed. The priority of the trustee's interest is controlled by Ohio nonbankruptcy law. *See In re Giaimo*, 440 B.R. at 766. Ohio has adopted U.C.C. § 9-317, which provides that a person who becomes a lien creditor before an earlier-in-time security interest is perfected is entitled to priority over the earlier security interest, even if the lien creditor's interest is unperfected. *See* R.C. § 1309.317(A)(2)(a). In other words, Ohio law gives judicial lien creditors priority over earlier-in-time, unperfected security interests. Accordingly, the chapter 7 trustee's hypothetical judicial lien has priority over Harley-Davidson's earlier-in-time, but no longer perfected, security interest. This conclusion is consistent with other bankruptcy and appellate court decisions applying comparable certificate of title and secured transactions statutes. *See In re Lortz*, 344 B.R. 579 (C.D. Ill. 2006) (finding that a creditor's unperfected purchase-money security interest was avoidable by the chapter 7 trustee's strong-arm powers) *Farmer v. LaSalle Bank* (*In re Morgan*), 291 B.R. 795, 805

9

11-20295-aih    Doc 47    FILED 03/06/14    ENTERED 03/07/14 09:16:23    Page 9 of 11

(Bankr. E.D. Tenn. 2003) (holding that the chapter 7 trustee could avoid a lien not properly noted on the certificate of title as of the petition date); *Pokela v. Dakotas United Methodist Fed. Credit Union* (*In re Huyck*), 167 B.R. 908, 910 (Bankr. D.S.D. 1994) (finding a creditor's security interest that was no longer perfected on the bankruptcy petition filing date subordinate to the chapter 7 trustee's interest); *see also United States v. Rotherham*, 836 F.2d 359, 364-65 (7th Cir. 1988) (finding that the Uniform Commercial Code, not Illinois's comparable certificate of title law, controls priority of a judicial lien over a purchase money security interest in an automobile). Because the chapter 7 trustee's interest is superior to Harley-Davidson's lien, the trustee is entitled to administer the proceeds of the motorcycle sale for the benefit of unsecured creditors.

The Court finds unpersuasive Harley-Davidson's allegation that the debtor obtained the notation of discharge and physical certificate of title by fraud. After the debtor's original pay-off checks to Harley-Davidson bounced in January and February 2009, the debtor resumed making substantial, regular payments to the debtors for approximately 22 months. Furthermore, the debtor again unsuccessfully attempted to pay off the debt by check in November 2010, an action inconsistent with a scheme to defraud Harley-Davidson. Harley-Davidson has not presented evidence that the debtor attempted to take advantage of Harley-Davidson's mistake by selling or transferring the motorcycle prior to filing

for chapter 7 relief. The debtor may well have been oblivious to the significance of Harley-Davidson erroneously noting the lien discharge and sending the physical certificate of title before the debtor's loan was paid in full. No one attempted to take advantage of the lien discharge notation until after the debtor filed for bankruptcy, when the chapter 7 trustee sought to liquidate property of the debtor's estate for the benefit of the debtor's creditors. These facts are insufficient to support a finding that the debtor obtained the lien discharge notation and physical certificate of title by fraud.

CONCLUSION

For the aforementioned reasons, the Court finds that creditor Harley-Davidson Credit Corporation no longer held a perfected lien on the debtor's 2008 Harley-Davidson motorcycle as of the debtors' chapter 7 petition filing date. The chapter 7 trustee is entitled to priority over this unperfected lien pursuant to 11 U.S.C. § 544(a)(1) and R.C. § 1309.317(A)(2)(a). The proceeds of the sale authorized by the Court's Limited Order Granting Motion to Sell Property Free and Clear of Liens (Docket #44) are therefore property of the estate to be administered by the chapter 7 trustee for the benefit of the debtor's creditors. Pursuant to Rule 3002(c)(3) of the Federal Rules of Bankruptcy Procedure, Harley-Davidson shall have 30 days from the date this judgment becomes final to file a proof of claim as an unsecured creditor.

IT IS SO ORDERED.